Connie HUDSON, Surviving Spouse of Richard D. Hudson, Deceased, for the Benefit of Connie HUDSON, Elizabeth Hudson and Benjamin Hudson, Plaintiff–Appellant,

v.

HUDSON MUNICIPAL CONTRACTORS, INC. and Maryland Casualty Company, Intervening Plaintiffs/Appellees,

and

Deshawn Wentz and Samuel Wentz, Defendants.

Supreme Court of Tennessee, at Nashville.

April 24, 1995.

Mart G. Fendley, Fleming, Rudolph, Ross & Fendley, Clarksville, for plaintiffs-appellants.

John Thomas Feeney, D. Randall Mantooth, Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napolitan, Nashville, for intervening plaintiffs-appellees.

## OPINION

REID, Justice.

The Court of Appeals affirmed the trial court's judgment granting the workers' com-

pensation carrier an award and lien against the proceeds of a settlement received by the widow of a deceased worker from his uninsured motorist carrier, in the amount of workers' compensation benefits paid as the result of the death of the worker. The issue presented is whether the workers' compensation carrier may recover, even though, pursuant to the terms of the uninsured motorist policy, the settlement had been reduced by the amount of workers' compensation benefits paid.

The plaintiff-appellant, Connie Hudson, is the surviving widow of Richard D. Hudson, who lost his life as the result of a collision between a vehicle operated by him and one operated by the defendant DeShawn Wentz. Neither the driver of the vehicle nor the owner, Samuel Wentz, had liability insurance coverage with regard to the operation of the vehicle. The deceased was insured under an automobile liability insurance policy issued by the Grange Mutual Casualty Company, which provided uninsured motorist coverage in the amount of one million dollars for bodily injury to one person. The appellee, Maryland Casualty Company, was the workers' compensation carrier for the deceased's employer, Hudson Municipal Contractors, Inc.

The appellant instituted this action for wrongful death against DeShawn Wentz and Samuel Wentz. Grange, the uninsured motorist carrier, was served with process pursuant to Tenn.Code Ann. § 56–7–1206(a) (1994). Maryland Casualty, the employer's workers' compensation carrier, filed an intervening complaint to enforce its right of subrogation against any recovery obtained from the defendant tortfeasors, pursuant to Tenn.Code Ann. § 50–6–112(c)(1) (1991).

The appellant filed a motion for partial summary judgment that Maryland Casualty had no subrogation interest against the deceased's uninsured motorist coverage.

The suit for damages was settled prior to trial. Pursuant to the settlement agreement, the appellant acknowledged satisfaction of Grange's liability under the uninsured motorist policy in exchange for a contemporaneous payment by Grange of $306,227 and a commitment to make certain specified monthly payments thereafter. The tortfeasor was not released. The terms of the settlement agreement were approved by the court, but the court reserved the issue of Maryland Casualty's subrogation claim against the proceeds of the settlement.

The trial court subsequently denied the motion for partial summary judgment and allowed the subrogation claim and the Court of Appeals affirmed.

Tenn.Code Ann. § 50–6–112(a) provides that an injured worker, or the dependents of a worker who was killed, may recover from a party that has "a legal liability" with respect to the worker's injury, notwithstanding the fact that the injured worker, or his dependents, is entitled to receive compensation under the Workers' Compensation Law. However, where the injured worker must rely upon uninsured motorist insurance coverage to satisfy the claim for damages, the injured worker's recovery may be limited by an offset provision in the uninsured motorist policy. Tenn.Code Ann. § 56–7–1205 (1994) governs the minimum policy limits of uninsured motorist coverage. That statute includes the provision:

> Such forms of coverage may include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance and other benefits.

"Other benefits" limiting coverage may include workers' compensation benefits. The policy in this case included the following provision:

> *Limits of Liability.* Regardless of the number of insureds under this policy, the company's liability is limited as follows:
>
> (a) . . .
>
> (b) Any amount payable under the terms of this insurance because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by . . . the amount paid and the present value of all amounts payable on account of such bodily injury under any workers' compensation law, disability benefits law or any similar law.

*Terry v. Aetna Casualty & Sur. Co.,* 510 S.W.2d 509 (Tenn.1974), was a case in which a worker was killed in an automobile accident

while acting within the course and scope of his employment. The deceased worker was covered under an uninsured motorist policy issued by Aetna Casualty & Surety Company, which contained an offset provision identical to the provision in the policy issued by Grange in this case. The Court described the factual setting in *Terry v. Aetna Casualty & Sur. Co.* as follows:

As a result of Terry's death, workmen's compensation benefits have been paid or allowed in the amount of $10,080.26.

As a result of this accident appellant, Lona Norine Terry, the widow of Vernon Lee Terry, has recovered a judgment against Carl Reed Yearwood [the uninsured motorist] in the amount of $100,-000.00. Appellee in accord with T.C.A. § 56–1153 was timely notified of his suit.

On October 30, 1972, appellant brought the action *sub judice* to recover under the provisions of the uninsured motorist coverage contained in appellee's policy, the amount applicable in this case being the sum of $10,000.00.

*Id.* at 510. The Court observed that the offset provision contained in the uninsured motorist policy was authorized by Tenn.Code Ann. § 56–7–1205 [1] and held that the insured's right of recovery against the uninsured motorist carrier was reduced by the amount that had been recovered under the Workers' Compensation Law. Inasmuch as the policy limit of the recovery under the uninsured motorist policy was $10,000, and the insured had already recovered more than $10,000 under the Workers' Compensation Law, the result was that the insured was entitled to nothing from the uninsured motorist carrier.

In *Dwight v. Tennessee Farmers Mut. Ins. Co.*, 701 S.W.2d 621 (Tenn.App.1985), the Court of Appeals dealt with an uninsured motorist policy which contained a setoff provision also identical to the one in this case. The Court of Appeals held that the insured's right to recover under the uninsured motorist policy was reduced by the amount the insured could have recovered under the Workers' Compensation Law. The Court of Appeals made this holding notwithstanding

the fact that the insured had elected not to attempt to recover under the Workers' Compensation Law, and her right to recover under the Workers' Compensation Law had expired by the time she received a judgment against the party that caused the injury.

■ Under the holdings in *Terry v. Aetna Casualty & Sur. Co.* and *Dwight v. Tennessee Farmers Mut. Ins. Co.*, it is clear that an insured party's right to recover under an uninsured motorist policy that contains a setoff provision such as the one involved in this case may be reduced by the amount that the insured has collected, or could collect, under the Workers' Compensation Law.

And, even where the worker's recovery is against a solvent tortfeasor or the tortfeasor's liability insurance carrier, and, therefore, is not subject to the uninsured motorist contractual limitation, the worker's recovery is limited by the amount of worker's compensation benefits. The employer, or the employer's workers' compensation carrier, has a right of subrogation as provided in Tenn. Code Ann. § 50–6–112(c)(1), which states as follows:

In event of such recovery against such third person by the worker, or by those to whom such worker's right of action survives, by judgment, settlement or otherwise, and the employer's maximum liability for workers' compensation under this chapter has been fully or partially paid and discharged, the employer shall have a subrogation lien therefor against such recovery, and the employer may intervene in any action to protect and enforce such lien.

Under this statute, the worker's recovery from the tortfeasor or his liability insurer would be reduced by the amount of the workers' compensation benefits.

■ The issue in this case is whether the workers' compensation insurance carrier is entitled to an award against the proceeds of a settlement between the worker's personal representative and the uninsured motorist insurer. Will the appellant's damages be reduced twice by the amount of the workers'

---

1. Previously Tenn.Code Ann. § 56–1152 (1967).

compensation benefits, first by the offset and again by the subrogation claim?

■ Resolution of this issue is found in the language of the statute, which defines the nature of the employer's claim and of the worker's recovery. Tenn.Code Ann. § 50–6–112 provides, relevant to this case, that when death for which compensation is payable under the Workers' Compensation Law, "was caused under circumstances creating a legal liability against some person other than the employer to pay damages," the deceased worker's personal representative may pursue an action for wrongful death against those persons having "a legal liability" for the worker's death. It further provides that in the event of a recovery against such persons, "by judgment, settlement or otherwise, . . . the employer shall have a subrogation lien" for the amount of benefits "against such recovery." In this case, the uninsured motorist insurer's liability to the appellant is not "a legal liability" for the worker's death. It is, instead, a liability in contract, determined by the terms of the insurance agreement. The distinction was noted in a decision by the Georgia Supreme Court and discussed by Professor Larson:

> The Georgia Supreme Court, in reversing [*Board of Regents v. Oelke*, 120 Ga. App. 667, 172 S.E.2d 183 (Ga.Ct.App.1969), *rev'd*, 226 Ga. 310, 174 S.E.2d 920 (Ga. 1970)], cut through all these distinctions and arguments and rested its decision squarely on the proposition that the proceeds of an uninsured motorist clause are the fruits of a contractual obligation between the insurer and the insured employee, whereas the liability of a third party covered by the subrogation section of the compensation act is a tort liability. Therefore the payment to the employee of the proceeds of the uninsured motorist policy is not made "on account of" the occurrence of the compensable injury, but rather on account of the contract. The court notes in passing that this reasoning is confirmed by the fact that the payment under the uninsured motorist policy does not discharge *pro tanto* the tort liability of the uninsured motorist and cannot be pleaded in defense of an action by the injured party against the uninsured motorist.

2A Arthur Larson, *The Law of Workmen's Compensation* § 71.23(g) (1994) (footnotes omitted). *See* Tenn.Code Ann. § 56–7–1204.

■ In addition, because the appellant has no right to recover the damages represented by the offset provision of the policy, Maryland Casualty has no claim against the proceeds of the settlement. Maryland Casualty has no independent cause of action against Grange. Pursuant to Tenn.Code Ann. § 50–6–112(c)(1), Maryland Casualty, as the worker's compensation carrier, *is subrogated* to the rights of the deceased worker's personal representative. The right of recovery of a subrogee is no greater than the right of recovery of the subrogor. In *McGee v. County of Wilson*, 574 S.W.2d 744 (Tenn. App.1978), the Court of Appeals discussed the rights and obligations of the parties, where the injured plaintiff had released his claim against a deputy sheriff, who, during the course of his employment by the county, had caused the plaintiff's injury. The Court of Appeals held that, because the plaintiff had destroyed the county's right of subrogation against the tortfeasor by releasing the deputy sheriff, the plaintiff could not assert a claim for injuries against the county based upon the acts of the deputy sheriff. Pertinent to the issue in this case, the court held:

> Since the rights of the subrogee (the person held liable) would be identical to the rights of the subrogor (the injured person), the subrogee would have no right of subrogation if the injured party had released his rights against the wrongdoer.

*Id.* at 747. *See also Tennessee Farmers' Mut. Ins. Co. v. Rader*, 410 S.W.2d 171 (Tenn.1966). Since Maryland Casualty, as subrogee, has no rights greater than the appellant, as subrogor, Maryland Casualty has no claim against Grange or the proceeds received by the appellant from Grange.

The judgment of the Court of Appeals is reversed, and the appellant's motion for partial summary judgment is granted.

Costs are taxed against Maryland Casualty.

ANDERSON, C.J., DROWOTA and BIRCH, JJ., and CHARLES H. O'BRIEN, Special Justice, concur.