In the Matter of the Arbitration between JOAN PHELAN, Individually and as Administratrix of the Estate of JOHN PHELAN, Deceased, Claimant, and MOTOR VEHICLE ACCIDENT INDEMNIFICATION CORPORATION, Respondent.

Supreme Court, Special Term, Kings County, December 27, 1966.

*John J. Cullen* for claimant.  *Watters & Donovan* for respondent.

MURRAY T. FEIDEN, J. This is a motion by claimant-respondent for leave to reargue the granting, on technical grounds, of an application by respondent MVAIC to stay arbitration. Both sides have advised the court that they are not concerned with the technical issue and desire a determination on the merits. Accordingly, leave to reargue is granted.

The motion presents a question of law of first impression. The undisputed facts are as follows: On February 19, 1964, the claimant's intestate, a New York City Department of Sanitation employee, while in the performance of his duties, was killed by an uninsured automobile. Claimant's intestate was an "insured" person under the standard New York Automobile Accident Indemnification Endorsement contained in the automobile liability policy issued to the deceased. At the time of his death, deceased was a member of the New York City Employ-

ees' Retirement System and, as such, his widow and next of kin were entitled to certain statutory benefits as set forth in section B3–33.0 of the Administrative Code of the City of New York. Pursuant to a resolution adopted by the New York City Board of Estimate on October 8, 1964, the widow was awarded "an annual accidental death pension." Previously, on May 18, 1964, the claimant had served upon the MVAIC a notice of intention to make a claim against it for wrongful death and pain and suffering as a result of the aforesaid accident. A demand for arbitration was served on January 19, 1966.

MVAIC contends that the present actuarial value of the accidental death pension is far in excess of its limited liability of $10,000 and that it is entitled to offset its liability by the present value of said pension payment. Its argument is based on paragraph 5 (subd. [b], cl. [3]) contained in the "Conditions" portion of its endorsement to the liability policy issued to the deceased. Said paragraph provides that any amount payable under such policy shall be reduced by "the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, exclusive of non-occupational disability benefits." It is the contention of MVAIC that the words "any workmen's compensation law" are to be construed as meaning any payments "in the nature of and in lieu of workmen's compensation" and that the payment to the widow and her children, although specifically labeled as a "pension" by the Board of Estimate, nevertheless comes within the category of payments under a workmen's compensation law.

The only issue to be determined on this motion is whether or not this court will judicially enlarge the language of the MVAIC endorsement to equate payments made under a retirement or pension system with those made under a workmen's compensation law. The language of the MVAIC endorsement is clear and unambiguous. It refers only to "any workmen's compensation payments." Even if there were any ambiguity in the language of the endorsement, which the court does not feel is present, such ambiguity would have to be resolved against the MVAIC. (*McGuiness v. MVAIC,* 18 A D 2d 1100 and cases cited therein.) It is significant that under paragraph (c) of the "Exclusions" section of the endorsement in question (although this particular section is not relevant to the specific issue here presented), there appear the words "any workmen's compensation or * * * any similar law." The omission of the words "or any similar law" under paragraph 5 (subd. [b], cl. [3]) of the "Conditions" section is a persuasive reason

against interpolating such words into that section. If the MVAIC intended to further reduce its liability by benefits received "in the nature of or in lieu of workmen's compensation", it could and should have so stated its intention in those or similar words in paragraph 5 (subd. [b], cl. [3]) of its endorsement. MVAIC was delegated the power to insert such endorsement, subject to the approval of the Superintendent of Insurance. (Insurance Law, § 167, subd. 2-a; § 606, subd. [b].)

The fact that the words "workmen's compensation law" appear in lower case letters does not aid respondent's contention. The use of such letters only indicates that a New York resident working in a different State and receiving workmen's compensation benefits under the law of any foreign State would also be subject to the endorsement. To ask this court to equate payments under the Workmen's Compensation Law with those made under a pension or retirement plan is to completely overlook the essential differences while unduly emphasizing some superficial similarities between such payments. One of the important differences is that an employee under the New York City Employees' Retirement System (Administrative Code of the City of New York, ch. 3, tit. B) is not entitled to any benefits under such system unless and until he has made certain money contributions deductible from his salary, whereas the same is not true under the Workmen's Compensation Law. (*Cady* v. *City of New York,* 19 A D 2d 822, affd. 14 N. Y. 2d 660.) Thus, in the instant case, even if the widow of the deceased is entitled to receive back her husband's accumulated deductions in addition to an annual accidental death pension, the fact remains that the widow would not have been entitled to this pension were it not for her husband's money contributions in the first instance. Such contributions are in the nature of a condition precedent to her pension benefits. Accidental death pension payments are in the same category as payments from a collateral source of payments for which the injured person or deceased has paid premiums. It is well settled that such payments do not inure to the benefit of tort-feasors or those standing in their shoes. (*Cady* v. *City of New York, supra; Lehr* v. *City of New York,* 16 A D 2d 702; *McGee* v. *Horvat,* 23 A D 2d 271, 276.)

The statutory purpose of setting up the Motor Vehicle Accident Indemnification Corporation Law was to afford to the injured person the same protection as he would have if the tort-feasor were covered by insurance. (*McCarthy* v. *MVAIC,* 16 A D 2d 35, 38, affd. 12 N Y 2d 922.) It is clear that if the automobile which caused the death of claimant's intestate had carried insurance, the owner of such automobile could not have

mitigated damages by the payments made under the pension fund. It is therefore equally clear that, absent any express and unequivocal endorsement to the contrary, MVAIC is not entitled to mitigate its damages by the pension payment. There is nothing in the language of the endorsement, the legislative intent, or the logic and justice of this situation which would impel this court to interject language in the endorsement which it does not now contain.

The cases cited by MVAIC to support its contention are inapplicable. Thus, the fact that it was held in *Frye* v. *United States* (72 F. Supp. 405) that pension payments are taxable under the income tax law, does not change the character of pension payments with respect to the issues we are dealing with here. Likewise, the decision in *Matter of Ryan* v. *City of New York* (228 N. Y. 16) that police officers do not need the protection of the Workmen's Compensation Law because compensation is assured to them by independent disability and pension statutes, does not mean that they are to be equated with each other so far as the MVAIC endorsement is concerned. The respondent's reliance on *Matter of Pignataro* v. *Westchester Parkway Police Dept.* (5 A D 2d 523) is misplaced. In that case, a specific provision of the Civil Service Law prohibited an employee from receiving payments from both a pension fund and under the Workmen's Compensation Law for the same accident. It was necessary in that case to determine whether the payment of an accidental disability retirement pension was a payment which represented duplication of benefits and it was held that in view of the statutory prohibition against double payments, any payments made under the Workmen's Compensation Law had to be offset. We do not have any such statutory prohibition or issue in this case.

It is anomalous that a person who is an " insured " may have a recovery reduced by any workmen's compensation payments he may have received, whereas a " qualified " person is not confronted with such reduction. (*Matter of Durant* [*MVAIC*], 15 N Y 2d 408.) The claimant in the instant case urges that such anomalous result makes the MVAIC endorsement unconstitutional. She contends that the *Durant* decision is not dispositive of that issue because the constitutional question was never raised in the lower court, although there was some casual footnote reference thereto in the Appellate Division opinion. However, in view of this court's holding that the language of the endorsement is not to be enlarged to include payments other than workmen's compensation payments, it is not necessary for it to pass upon the constitutional issue.

The motion to stay arbitration with respect to the claimant in her representative capacity is denied. It is conceded that the claimant in her individual capacity has no right to arbitration. The motion to permanently stay arbitration as to Joan Phelan, individually, is granted.