IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

# VICTORIA INSURANCE COMPANY v. ANNIE HAWKINS, ET AL.

**An Appeal from the Circuit Court for Shelby County**
**No. 93890 T.D.      The Honorable Robert L. Childers, Judge**

---

### No. W1999-01650-COA-R3-CV - Decided April 6, 2000

---

Plaintiff, Victoria Insurance Company, filed this declaratory judgment suit against defendants, Annie Hawkins, Arnold Hawkins, individually and as parents or legal guardians of Terrell Hawkins, Marlus Taylor and Tammy Terry to determine coverage under the uninsured motorist provision of a liability insurance policy issued to defendant, Arnold Hawkins, and applicable to defendants, Annie Hawkins and Terrell Hawkins. The Hawkins vehicle collided with a vehicle driven by defendant, Marlus Taylor, and owned by defendant, Tammy Terry, after Marlus Taylor was shot from another motor vehicle by unknown assailant. From the order of the trial court denying Victoria's motion for summary judgment and granting judgment to the defendants, Victoria has appealed.

**Tenn.R.App.P. 3; Appeal as of right; Judgment of the Circuit Court Reversed and Remanded**

CRAWFORD, P.J., W.S., delivered the opinion of the court, in which FARMER, J., and LILLARD, J., joined.

Roane Waring III, Memphis, For Appellant

Kendall Reeves, Memphis, For Appellees, Annie Hawkins and Arnold Hawkins

### OPINION

JUDGE CRAWFORD delivered the opinion of the court.

This is a declaratory judgment suit brought by the plaintiff, Victoria Insurance Company, seeking a declaration that it is not obligated to provide uninsured motorist coverage to the defendants-insureds, Annie Hawkins, Arnold Hawkins, and Terrell Hawkins. Plaintiff appeals the trial court's order denying its motion for summary judgment and granting judgment for defendants.

The facts are undisputed as stipulated by the parties. Victoria issued a motor vehicle liability insurance policy to Arnold Hawkins for a policy period of April 17, 1996 through April 17, 1997, which included uninsured/underinsured motorist coverage. On June 14, 1996, Arnold Hawkins was driving the insured vehicle westbound in the southern-most traffic lane on the south loop of Interstate 240, near Airways Boulevard in Memphis, Tennessee, and Annie Hawkins and Terrell

Hawkins were passengers. At the same time, Marlus Taylor was driving eastbound in a 1993 Mizubishi Gallant owned by Tammy Terry on the south loop of Interstate 240 near the Airways Boulevard exit. About the same time, an unknown vehicle was traveling eastbound in the center traffic lane for eastbound traffic in proximity to the Terry vehicle, when a passenger in the unknown vehicle fired gun shots into the Terry vehicle striking the driver, Marlus Taylor. As a result of being shot, the Taylor vehicle crossed over the center median area into the westbound traffic lanes where it collided with the Hawkins vehicle. Taylor was killed by the gun shot, and the driver of the unknown vehicle and his passenger have never been identified. There was no policy of motor vehicle insurance providing coverage for Taylor or Terry at the time of the motor vehicle accident on June 14, 1996. Arnold Hawkins, Annie Hawkins, and Terrell Hawkins filed a complaint in the Circuit Court for the Thirtieth Judicial District at Memphis seeking damages allegedly sustained by the collision. The complaint is styled: "Annie Hawkins, Arnold Hawkins, Individually and as Parents and/or Legal Guardians of Terrell Hawkins versus John Doe (1) John Doe (2), Marlus Taylor and Tammy Terry.

Victoria filed the instant suit against defendants for a declaration that it was not obligated to provide uninsured motorist coverage to Annie Hawkins, Arnold Hawkins or Terrell Hawkins pursuant to the terms and provisions of the insurance policy. The trial court denied Victoria's motion for summary judgment and *sua sponte* granted judgment to defendants. At the conclusion of the argument on the motion for summary judgment, the court stated:

> It was caused by the actions of a third party and to me, again, it does not make any difference whether they're in a vehicle or standing on the side of the roadway. If they do something to cause a problem to one vehicle that then runs into another vehicle, that's an automobile accident and I think it is covered under the policy.

Victoria has appealed, and the only issue for review is whether the trial court erred in holding that there is coverage pursuant to the uninsured motorist provisions of the subject automobile insurance policy.

Questions involving an insurance policy's coverage and an insurer's duty to defend require the interpretation of the insurance policy in light of claims asserted against the insured. *Standard Fire Ins. Co. v. Chester O'Donley & Assoc.*, 972 S.W.2d 1 (Tenn. Ct. App. 1998). The issues relating to the scope of coverage present questions of law which can be resolved by summary judgment when the relative facts are not in dispute. *Id.* at 5-6. Summary judgment may be granted only when there are no genuine material factual disputes with regard to the claim or the defenses asserted in the motion, and when the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993).

In construing contracts, the words expressing the parties' intentions should be given the usual, natural and ordinary meaning. *Ballard v. North American life & Cas. Co.*, 667 S.W.2d 79 (Tenn. Ct. App. 1983). Where there is no ambiguity, it is the duty of the court to apply to the words used their ordinary meaning and neither party is to be favored in their construction. *Id.* at 83. In

*Ballard*, the Court, quoting from *Guardian Life Ins. Co. of America v. Richardson*, 23 Tenn. App. 194, 129 S.W.2d 1107 (1939), said:

> Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence (intention) as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties and embodying requirements, . . .

667 S.W.2d at 82.

The pertinent parts of Victoria's insurance policy are:

> PART C - UNINSURED MOTORIST COVERAGE INSURING AGREEMENT
>
> A. We will pay compensatory damages which an "insured is legally entitled to recover from the owner or operator of any "uninsured motor vehicle" because of
>
> > 1."Bodily injury" sustained by an "insured" and caused by an accident;
> >
> > 2. "Property damage" caused by an accident if the Schedule or Declaration Page indicates that both "bodily injury" and "property damage" Uninsured Motorists Coverage applies.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."
>
>        \*        \*        \*
>
> B. "Insured" as used in this endorsement means
>
> > 1. You or any "family member."
> >
> > 2. Any other person "occupying" "your covered auto."

\* \* \*

D. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

>1. To which no bodily injury liability bond or policy applies at the time of the accident.
>
>. . .
>
>3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits, or causes an accident resulting in "bodily injury" or "property damage" without hitting:
>
>a. You or any "family member,"
>
>b. A vehicle which you or any "family member" are "occupying," or
>
>c. "Your covered auto."
>
>If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proven by clear and convincing evidence. We will only accept competent evidence other than evidence provided by the occupant of :
>
>>a. "Your covered auto," if "your covered auto" is involved in the accident.

Victoria asserts that the accident in question did not "arise out of the ownership, maintenance, or use of the motor vehicle." Appellees assert that the Terry vehicle is an uninsured motor vehicle, and that the accident arose out of the ownership and use of this vehicle. Moreover, the appellees assert that the policy language regarding hit and run vehicles qualifies the unknown vehicle in this case as an uninsured motor vehicle, because it does not differentiate between negligent and intentional actions.

Under the subject policy, the company is obligated to pay to the insureds such sum as the "insured is legally entitled to recover from the owner or operator of any 'uninsured motor vehicle'" for bodily injury caused by an accident. The policy unambiguously requires that the driver's and owner's liability for damages "must arise out of the ownership, maintenance, or use of an insured

motor vehicle." Therefore, we first consider whether the insureds' injuries were caused by accident arising out of the operation, maintenance, or use of an uninsured motor vehicle.

In *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363 (Tenn. 1973), our Supreme Court interpreted the meaning of the phrase "arising out of the ownership, maintenance, or use" of an automobile as it applies to liability coverage. In *Travelers*, Raymond Lewis Muehlman, a college student, was loading a shotgun into the automobile of a fellow student, Rapai, when the shotgun discharged and injured Rapai. Rapai recovered a judgment for damages against Muehlman, and in a subsequent lawsuit filed against Muehlman's automobile liability carrier, the chancellor held that Rapai's injuries resulted from the use of the automobile as defined under the policy. In affirming the trial court's judgment that coverage was available for Muehlman, the Court said:

> The term "arising out of the use" in liability policies has generally been held to be a broad, comprehensive term meaning "origination from," "having its origin in," "growing out," or "flowing from." (Citations omitted). The term "use," then, has been a general catch-all term construed by the courts to include all *proper* uses of a vehicle. Appleman, Insurance Law and Practice, Sec. 4316 (1962). (Emphasis added).

*Id.* at 365.

In *Anderson v. Bennett*, 834 S.W.2d 320 (Tenn. Ct. App. 1992), this Court determined that injuries sustained by an insured when an angry driver discharged a firearm in the direction of a group of children did not arise out of the "use" of the vehicle. In affirming the trial court's order granting summary judgment to the insurer, the Court said:

> In considering the facts of the case at bar, we find that the defendant Bennett's use of the vehicle to discharge his weapon in the direction of the group of children was not a proper or normal use of the vehicle as required by *Travelers*, *supra*. Because we find as a matter of law that the accident did not result from the proper use of Bennett's vehicle, we find it unnecessary to reach the question of whether there existed a causal relationship between Bennett's use of the vehicle and the injury to Laura Anderson.

*Id.* at 323.

This Court most recently addressed the issue of whether the use of a vehicle to fire a weapon is a "proper use of a vehicle" in *Weil v. Gaia, et al*, 1999 WL 455432 (Tenn. Ct. App.)(Application for Permission to Appeal denied Oct. 25, 1999). Weil, a passenger in an uninsured vehicle, was injured by a gunshot from the driver of another uninsured vehicle. Plaintiff filed suit against the drivers of both vehicles. The defendant insurance company was served with process and filed a motion to sever the insurance question from the tort action and deny coverage. The motion was

denied by the trial court, and on appeal, this Court reversed, stating:

> In this case, Gaia used his vehicle to chase Ware's car, and to fire a weapon at Ware's car. In view of **Anderson**, we must conclude that Gaia's use of his vehicle to fire a weapon at Ware's car was not a proper use under the uninsured motorist provision of Weil's insurance policy. This holding makes it unnecessary to reach the issue of whether there was a casual connection between Gaia's use of his vehicle and the shooting. Therefore, Weil's injury was not "caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle," within the meaning of her insurance policy and State Farm is not obligated to provide coverage to her under the uninsured motorist provision.

*Id.* at *5. The Court did not address uninsured motorist coverage as it might apply to Weil's suit against the driver of the automobile in which she was riding.

In the instant case, appellees point out that we are dealing with two uninsured motor vehicles, the vehicle from which the gunshot came and the vehicle which collided with the insured. Appellees contend that the policy language does not differentiate between negligent and intentional acts for the hit and run vehicle, and that therefore the vehicle meets the definition of an uninsured motor vehicle in the policy. We must respectfully disagree. Appellees overlook the fact that the use of the vehicle, whether identified or unidentified, must be a proper use in order for the liability to arise out of the use of the vehicle as required in the policy.

Appellees next assert that there should at least be coverage because the Terry vehicle was being used in a proper manner when it collided with the Hawkins vehicle. Conceding that to be a fact, we must then proceed with a second prong of the test described in **Travelers** to then determine whether there is a causal connection between the use of the Terry vehicle and the injury. *Id.* at 365. Concerning causation, the **Travelers** Court said:

> Each case turns on its precise individual facts. The question to be answered is whether the injury "originated from," had its origin in, "grew out of," or "flowed from" the use of the vehicle.

*Id.* at 366.

In the instant case, the parties filed a written stipulation of facts which specifically states: "***As a result*** of Taylor being shot, the Terry vehicle left the right . . . traffic lane and crossed on to the north side of the roadway." (Emphasis added). Thus, it is stipulated that the causation in fact of the injuries to the insureds was the action of the person in the

unidentified vehicle. In the absence of a casual connection between the driver of the Terry vehicle and the insureds' injuries, there can be no uninsured motorist coverage.

Accordingly, there is no uninsured motorist coverage provided by the subject insurance policy for the injuries sustained by the insureds for which they seek recovery under docket number 88279-8 TTD, Circuit Court, for the Thirtieth Judicial District of Memphis.

The order of the trial court is reversed, and the case is remanded to the trial court for further proceedings as may be necessary. Costs of the appeal are assessed to appellees, Annie Hawkins and Arnold Hawkins.